IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JEFFERY LAIRD, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 1:22-00259-KD-N |
| | ) | |
| JIYA JEEL, LLC, *et al.*, | ) | |
| Defendants. | ) | |

**ORDER**

This matter is before the Court on the parties' Joint Motion to Approve FLSA Settlement and for Dismissal with Prejudice (Doc. 18) with a proposed settlement agreement (Doc. 18-1). Per the terms of the proposed settlement, Plaintiff shall receive **$10,577** of which he will be paid **$5,944.20** and the Sanford Law Firm will be paid **$4,632.80**. (Doc. 18-1 at 1).

In <u>Lynn's Food Stores, Inc. v. United States ex rel. Dep't of Labor, Emp. Standards Admin., Wage & Hour Div</u>., 679 F.2d 1350, 1352-1355 (11th Cir. 1982), the Eleventh Circuit recognized two (2) methods for settlement of claims brought pursuant to the FLSA: supervision by the Secretary of Labor; or court approval in a private action where a plaintiff is represented by counsel. As to the latter, which applies here, the parties may compromise and settle the FLSA claims but only with Court approval of the settlement agreement.

Specifically, courts must determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute" of the FLSA claims. <u>Lynn's Food Stores</u>, 679 F.2d at 1352-1355; <u>Dees v. Hydradry, Inc.</u>, 706 F.Supp.2d 1227, 1238-1239 (M.D. Fla. 2010). Evaluating the fairness of an FLSA compromise includes an assessment of: 1) the existence of fraud or collusion behind the settlement; 2) the complexity, expense and likely duration of the litigation;

1

3) the stage of the proceedings and amount of discovery completed; 4) the probability of plaintiff's success on the merits; 5) the range of possible recovery; and 6) the opinions of the counsel. Dees, 706 F.Supp.2d at 1241. Additionally, the FLSA "contemplates that 'the wronged employee should receive his full wages plus the penalty without incurring any expense for legal fees or costs.'" Silva v. Miller, 307 Fed. Appx. 349, 351 (11th Cir. 2009). "When a settlement agreement includes….attorney's fees and costs, the 'FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.'" Id. Moreover, 29 U.S.C. § 216(b) provides that "...[a]ny employer who violates…shall be liable to the employee….affected in the amount of….their unpaid overtime compensation….and in an additional equal amount as liquidated damages...The court…shall, in addition to any judgment awarded to the plaintiff…allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." Thus, "in any case where a plaintiff agrees to accept less than his full FLSA wages and liquidated damages, he has compromised his claim within the meaning of *Lynn's Food Stores*." Vergara v. Delicias Bakery & Restaurant, Inc., 2012 WL 2191299, *1 (M.D. Fla. May 31, 2012).

I. **Bona Fide Dispute and Fair and Reasonable Resolution**

Courts may approve a compromise resolving a bona fide dispute over FLSA provisions where a plaintiff's compromise of his claims (the settlement agreement) is a fair and reasonable resolution of that dispute. Lynn's Food, 679 F.2d at 1352-1355; Dees, 706 F.Supp.2d at 1238-1239. "[T]he parties requesting review of an FLSA compromise must provide enough information for the court to examine the bona fides of the dispute." Dees, 706 F.Supp.2d at 1241.

A.      **<u>Bona Fide Dispute</u>**

Section 216(b) of the FLSA provides that "... [a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages ..." 29 U.S.C. § 216(b). Section 207 is captioned "Maximum Hours" and paragraph (a)(1) states as follows:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

Plaintiff initiated this lawsuit against Defendants seeking to recover monetary damages, liquidated damages, prejudgment interest, litigation costs, and reasonable attorneys' fees pursuant to the FLSA. (Doc. 1). Specifically, Plaintiff alleged that during the time that he worked for the Defendants (June of 2020 - January 2021), they did not pay him a lawful minimum wage for all hours worked, or, an overtime premium for hours worked over 40 each week, in violation of his FLSA rights. Plaintiff claims that he regularly worked hours that went uncompensated while working at Defendants' hotel, 12 hours or longer shifts at the front desk, assisting with laundry and housekeeping on a daily or near-daily basis, and working maintenance seven (7) days a week; and that he would work an average of 114 hours/week. Plaintiff alleges that during this period the only compensation that he received was $8.00/hour and that he received no

overtime pay. Defendants deny these claims and argue that Plaintiff was at all times compensated properly.

Based on a review of the docket, the motion (Doc. 18) and proposed settlement agreement (Doc. 18-1), the Court finds that a bona fide dispute exists as to whether Plaintiff was paid minimum wage for all hours worked or an overtime premium for hours worked over 40 hours each week.

### B.     Fair and Reasonable Resolution

Lynn's Food requires this Court to determine whether Plaintiffs' compromise of their claims is fair and reasonable. Lynn's Food, 679 F.2d at 1352-1355; Dees, 706 F.Supp.2d at 1238-1239. A general framework for evaluating the fairness of an FLSA compromise includes: 1) the existence of fraud or collusion behind the settlement; 2) the complexity, expense, and likely duration of the litigation; 3) the stage of the proceedings and the amount of discovery completed; 4) the probability of plaintiff's success on the merits; 5) the range of possible recovery; and 6) the opinions of the counsel. Dees, 706 F.Supp.2d at 1241. The parties agree that the terms of settlement are fair and reasonable. (Doc. 18 at 2). Per Lynn Food's however, the Court must assess same.

#### 1.     Compromise of the FLSA Claims

Under the FLSA, "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages[.]" 29 U.S.C. § 216(b).

The parties agree that both sides compromised their positions. (Doc. 18-1 at 1-2 at ¶2, 4). Per the parties' joint motion, under the terms of the proposed settlement, Plaintiff will receive an amount that compensates him for the hours of uncompensated work at the applicable minimum wage per week during his alleged tenure with Defendants; and the damages he receives in this settlement are especially reasonable due to Defendants' position, that the business has closed, the pay records are missing, and the property has been sold. Defendants add that they have defenses to the action, and dispute the factual accuracy of Plaintiff's claims. And per the terms of the proposed settlement agreement, Plaintiff acknowledges that Defendant Jiya Jeel disputes that he suffered any lost pay and so acknowledges and agrees that the payment does not include payments on his claims of lost pay but is paid as a compromise settlement and as consideration for the waiver and the release of rights and obligations he makes via settling. (Doc. 18-1 at 1 at ¶2). Plaintiff also acknowledges that the Defendants contend that his claim has little likelihood of success on the merits and that the Defendants entered the settlement agreement solely to mitigate continued costs and expenses. (Id. at 2 at ¶4). Further, the settlement states that it is "a compromise of a doubtful and disputed claim[.]"

### 2.   Scope and Terms of the Proposed Settlement Agreement

The assessment of fairness is guided by prevailing FLSA case law and a review of the specific terms of the parties' proposed settlement agreement. Here, the settlement terms contain disfavored provisions that encumber approval of any FLSA settlement agreement.

First, the proposed release is pervasive (not just limited to FLSA claims) and unbounded, covering a "dizzying array of claims, known and unknown[]" which "courts have found to be an anathema to the FLSA." Moreno v. Regions Bank, 729 F. Supp. 2d 1346, 1350-1352 (M.D. Fla.

2010) (an employer may not "use an FLSA claim (a matter arising from the employer's failing to comply with the FLSA to leverage a release from liability unconnected to the FLSA[]"); Robinson v. Waste Pro of Fla., Inc., 2022 WL 17476666, *3 (M.D. Fla. Nov. 9, 2022), *Report & Recommendation*. "Such general or pervasive releases are frequently viewed as "side deal[s]' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee[]' ... [b]ecuase general releases 'confer[] an uncompensated, unevaluated, and unfair benefit on the employer,' they often do not survive judicial scrutiny." Robinson, 2022 WL 17476666 at *3.

Specifically, the proposed settlement terms include:

- The release is "of all issues and differences which may have arisen or may hereafter arise by virtue of the employment relationship between JIYA JEEL and LAIRD, and the relationship between SHARISH PATEL and LAIRD, and the cessation of that relationship, thereby avoiding the inconvenience, expense, uncertainty, and risk involved in further litigation[.]"  (Doc. 18-1 at 1).

- The release "is intended only to terminate further controversy respecting all claims which LAIRD has asserted or might assert based on local, state, or federal law." (Doc. 18-1 at 2 at ¶4).

- Plaintiff agrees "to take no further action against JIYA JEEL or PATEL, for any claim or cause of action which may have arisen, or exists by virtue of LAIRD's employment relationships with JIYA JEEL and/or the cessation of said employment relationship or his employment-related relationship, if any, with PATEL, whether currently known or whether discovered in the future." (Doc. 18-1 at 2 at ¶5).

- Plaintiff "releases JIYA JEEL, its owners, officers, directors, members, shareholders, agents, contractors, managers, employees and insurers, and its successors, predecessors, subsidiaries and affiliates and PATEL and his heirs, executors, administrators, agents, successors and assigns, separately and severally from liability for any wrongful or negligent acts which may have existed, or currently exist, by virtue of LAIRD's employment by JIYA JEEL and the cessation of said employment relationship, whether now known or whether discovered in the future." (Id. at 2 at ¶6).

- The release "will constitute full and final resolution of any and all claims or causes of action which may have arisen by virtue of LAIRD's employment with JIYA JEEL and

    the cessation of said employment or his relationship with the individual defendants. This RELEASE supersedes all other previous agreements between the parties, whether now known or whether discovered in the future." (Id. at 2 at ¶7).

- Plaintiff "irrevocably and unconditionally releases, acquits and forever discharges JIYA JEEL, and PATEL, together with their predecessors, successors, subsidiaries and affiliates, owners, officers, directors, members, shareholders, agents, managers, employees and insurers, heirs, executors, administrators, assigns and all persons acting by, through and under or in concert with JIYA JEEL and PATEL, of and from any and all charges, complaints, claims, liabilities, obligations, damages, promises, claims to back pay, employee benefits, insurance continuation, mental anguish or emotional distress or punitive damages, agreements, fines, penalties, controversies, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses, including attorneys' fees and costs of any kind or nature whatsoever, known or unknown, suspected or unsuspected, that are connected in any way with his employment or cessation of employment with JIYA JEEL or his relationship with any individual defendant, including, but not limited to, any and all claims available under Title VII of the Civil Rights Act (42 U.S.C. ' 2000e, et seq.), The Civil Rights Act (42 U.S.C. ' 1981), and the Equal Pay Act, 29 U.S.C. ' 206 et seq., the Americans With Disabilities Act, the Family and Medical Leave Act, the Genetic Information Non-Discrimination Act, the Employee Retirement Income Security Act, the National Labor Relations Act, the Occupational Safety and Health Act, the Fair Labor Standards Act, the Worker's Adjustment and Retraining Notification Act of 1988, any state or federal law relating to whistleblowers, the Alabama Worker's Compensation Act, including but not limited to, Alabama Code 25-5-11.1 (the retaliation provisions), all state tort actions, including, but not limited to, negligence, wantonness, fraud, assault and battery, invasion of privacy, intentional infliction of emotional distress, actions for breach of contract, as well as any other statutory or common law claims available under state, federal or local law, regulation, ordinance or order arising out of conduct occurring through date of this agreement. LAIRD further covenants and agrees that LAIRD shall forever refrain from instituting, prosecuting or causing to be instituted or prosecuted, any claim, action or lawsuit against the named DEFENDANTS that is in any way related to a claim, obligation, duty, demand or damage released in this RELEASE and shall indemnify DEFENDANTS and hold them harmless from and against any damage, loss or expense including attorney's fees, incurred by DEFENDANTS and arising out of or resulting from any such claim, action or lawsuit. (Doc. 18 at 3 at ¶8).

The foregoing proposed settlement terms vastly exceed the bounds of FLSA claims and provide for a release from liability unconnected to the FLSA -- *i.e.*, to "release" every conceivable claim the Plaintiff had, has, or may have in the future, against the Defendants.

Many courts within the Eleventh Circuit conclude that such broad releasees are unfair and unreasonable. As summarized in Moreno, 729 F.Supp.2d at 1351:

> An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled. In effect, the employer requests a pervasive release in order to transfer to the employee the risk of extinguishing an unknown claim. In the language of *Hydradry*, a pervasive release is a "side deal" [ ] in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee. (If an employee signs a pervasive release as part of a "side deal" and later discovers a valuable but released claim, the employee perhaps looks for compensation from the attorney who advise the employee to grant the release.) Although inconsequential in the typical civil case (for which settlement requires no judicial review), an employer is not entitled to use an FLSA claim (a matter arising from the employer's failing to comply with the FLSA) to leverage a release from liability unconnected to the FLSA.

"'Put simply, in order to be compensated consistent with the FLSA, an employee cannot be compelled to surrender other rights, for doing so undermines the fundamental mandatory nature of the minimum wage and overtime protections of the Act by enabling an employer to extract a price for simply doing what the Act requires[]' *Briggins v. Elwood TRI, Inc.*, 3 F.Supp.3d 1277, 1289 (N.D. Ala. 2014)." Lee v. Guyoungtech USA, Inc., 247 F.Supp.3d 1257, 1263-1264 (S.D. Ala. Mar. 23, 2017). A more appropriate release would narrow the scope of release, for instance, to "any and all charges, claims, damages, causes of action or lawsuits of the claims specifically pled in this civil action under the FLSA, 29 U.S.C. § 201 *et seq.*, and all claims for damages or attorneys' fees based on any such claims, arising out of, or pertaining in any way to" Plaintiff's action against the Defendants, up to the date of the Plaintiff signing this agreement. Harris v. Waste Serv. of Ala, LLC, 2017 WL 6498146, *3 (N.D. Ala. Dec. 19, 2017).

Thus, the Court declines approval of the foregoing settlement release provisions. See, e.g., Ferguson v. Cato Corp., 2017 WL 10581106, *3 (S.D. Ala. May, 31 2017) (same); Lee v. Guyoungtech USA, Inc., 2017 WL 1097201, *5 (S.D. Ala. Mar. 23, 2017) (same).

Second, the proposed settlement includes mutual non-disparagement provisions restricting the speech of all parties: Plaintiff "agrees to refrain from engaging in any conduct or making any statements, oral, written or in any form of social media, which would reasonably disparage, harm or otherwise, adversely impact the reputation of JIYA JEEL and PATEL[;]" and that the Defendants "shall not make any statement or take any action intended to or reasonably likely to dissuade any prospective employer from hiring LAIRD. If a reference from a prospective employer is sought from DEFENDANTS regarding LAIRD, DEFENDANTS shall either remain silent, or provide the reference within a reasonable time, and shall provide only dates of employment, last salary or rate of pay and last position or title." (Doc. 18-1 at 2 at ¶9).

"Provisions in a FLSA settlement agreement that ... prohibit[] disparaging remarks contravene FLSA policy and attempt to limit an individual's rights under the First Amendment." Housen v. Econosweep & Maint. Servs., Inc., 2013 WL 2455958, at *2 (M.D. Fla. June 6, 2013). And while some courts have approved settlements containing non-disparagement terms, such terms were supported only after the Court found there had been independent consideration in addition to the amount a plaintiff received from the FLSA settlement. See, e.g., Weldon v. Backwoods Steakhouse, Inc., 2014 WL 4385593, *4 (M.D. Fla. Sept. 4, 2014); Smith v. Aramark Corp., 2014 WL 5690488, *4 (M.D. Fla. Nov. 4, 2014) (Plaintiffs received separate consideration in exchange for, in part, non-disparagement agreement); Caamal v. Shelter Mortg.

Co., L.L.C., 2013 WL 5421955, *4 (M.D. Fla. Sept. 26, 2013) (Plaintiff received $500.00 in part for a non-disparagement agreement). There is no indication of such consideration here.

For these reasons, the Court cannot approve the parties' proposed settlement with the aforementioned disfavored terms.

**II.      Attorneys' Fees & Costs/Expenses**

The parties proposed settlement provides that Plaintiff shall receive **$10,577** of which he will be paid **$5,944.20** and the Sanford Law Firm will be paid **$4,632.80**. (Doc. 18-1 at 1). Per the parties' joint motion, "[c]onsistent with their representation agreement with Plaintiff, Plaintiff's counsel is receiving 40% of the settlement amount as well as incurred costs. Plaintiff's counsel has incurred more than $7,000.00 in attorneys' fees and costs on this matter. At just 50% of the incurred fees and costs, this amount is reasonable, especially given the substantial recovery for Plaintiff." (Doc. 18 at 3).  Apparently then, the Sanborn Law Firm seeks fees and costs based on the presence of a contingency agreement.

In FLSA actions, courts rely on the lodestar method for determining the reasonableness of the fees sought. Padurjan v. Aventura Limousine & Transp. Serv., Inc., 441 Fed. Appx. 684 (11th Cir. 2011); Perez v. Carey Int'l, Inc., 373 Fed. Appx. 907 (11th Cir. 2010); Norman v. Alorica, Inc., 2012 WL 5452196 (S.D. Ala. Nov. 7, 2012); Wolff v. Royal Am. Mgt., Inc., 2012 WL 5303665 (S.D. Ala. Oct. 25, 2012).  Under the lodestar method, courts multiply the number of hours reasonably expended by a reasonable hourly rate for similar legal services. Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Resolution Trust Corp. v. Hallmark Builders, Inc., 996 F.2d 1144, 1147, 1150 (11th Cir. 1993). Adjustments may be made "as necessary[.]" Blum v.

Stenson, 465 U.S. 886, 888 (1984)."[1] Moreover, the FLSA requires that the "court in such action shall….allow a reasonable attorney's fee….and costs of the action." 29 U.S.C. § 216(b). Further, the "FLSA requires judicial review…to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." Silva, 307 Fed. Appx. at 352; Czopek v. Tbc Retail Group., Inc., 2016 WL 7116112, *5 (M.D. Fla. Nov. 7, 2016), *report and recommendation adopted,* 2016 WL 7104187 (M.D. Fla. Dec. 6, 2016) (same). Courts thus consider whether the fees were negotiated separately and apart from a plaintiff's settlement of the FLSA claims. Wing v. Plann B Corp., 2012 WL 4746258, *4 (M.D. Fla. Sept. 17, 2012) *report and recommendation adopted,* 2012 WL 4746190 (M.D. Fla. Oct. 4, 2012) (where there is a reasonable basis for compromise and "Plaintiff's claims were resolved separately and apart from the issue of attorneys' fees…there is no reason to believe that Plaintiff's recovery was adversely affected by the amount of fees and costs to be paid to Plaintiff's counsel").

There is no information before the Court to support an award of attorneys' fees and/or costs. Additionally, there is no information submitted for the undersigned to conduct a lodestar analysis to determine the reasonableness of the attorneys' fees and/or costs requested (*i.e.*, no

---

[1] Norman v. Hous. Auth. of the City of Montg., 836 F.2d 1292 (11th Cir. 1988). Redundant, excessive, or otherwise unnecessary hours should not be included in the calculation of hours reasonably expended. Hensley, 461 U.S. at 434. Even when a party prevails, the court still must determine whether time was reasonably expended and if not, that time should be excluded. Id. While the "lodestar" method effectively replaced the balancing test in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-719 (5th Cir. 1974), the 12 Johnson factors "might still be considered in terms of their influence on the lodestar amount. The factors are: 1) time/labor required; 2) novelty/difficulty of the questions; 3) skill requisite to perform the services properly; 4) preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee; 6) whether the fee is fixed/contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and results obtained; 9) experience, reputation, and ability of the attorney; 10) "undesirability" of the case; 11) nature/length of the professional relationship with the client; 12) awards in similar cases. Johnson, 488 F.2d at 717-719.

billing records, no invoices for costs/expenses, no discussion of the reasonableness factors, no information as to the tasks conducted for the time billed, etc.). The billing attorneys have not even been identified. The billing rates have also not been provided. And there is no information as to whether such rates are reasonable in the *relevant* legal community (Mobile, Alabama). Moreover, there is no representation that the settlement was negotiated separately from counsel's fees and costs and so had no impact on Plaintiff's total recovery. Lyons v. Beef O' Brady's, 2015 WL 5602452, *3 (S.D. Ala. Sept. 23, 2015). See also e.g., Czopek, 2016 WL 7116112, *5; Wing, 2012 WL 4746258, *4; Bonetti v. Embarq Mgt, Co., 2009 WL 2371407 (M.D. Fla. Aug. 4, 2009) (such representation by the parties on the record is needed before approving FLSA settlements). Further, the "Eleventh Circuit has construed the FLSA to preclude courts, when reviewing settlement agreements, from approving fee awards based on nothing more than the existence of a contingency fee agreement …." Autrey v. Harrigan Lumber Co., 2021 WL 6335337 *2-3 (S.D. Ala. 2021) (citing Silva v. Miller, 307 Fed. Appx. 349, 351 (11th Cir. 2009)). Plaintiff has not addressed this aspect of the proposed settlement. Finally, as noted in Troxel v. Gunite Pros, LLC, 2022 WL 17416492, *4 (S.D. Ala. Dec. 5, 2022):

> "Fee applicants must exercise what the Supreme Court has termed 'billing judgment.' …. That means they must exclude from their fee applications excessive, redundant, or otherwise unnecessary" hours. *Barnes*, 168 F.3d at 428 (internal quotes omitted). "If fee applicants do not exercise billing judgment, courts are obligated to do it for them …." *Id*. These principles apply in FLSA cases. *E.g., Smith v. Werner Enterprises, Inc.*, 2015 WL 7185503 at *4 (S.D. Ala. 2015).

### III.  Conclusion

Accordingly, it is **ORDERED** that the parties' joint motion to approve the FLSA settlement agreement (Doc. 18) and dismiss this action with prejudice is **DENIED;** and the

parties' request for attorneys' fees and/or costs is **DENIED.** It is further **ORDERED** that on or before **January 4, 2023,** the parties shall jointly file: 1) a new motion and new FLSA settlement which cures the foregoing deficiencies; 2) the necessary assertions and documentary support for any attorney's fees and/or costs requested under the FLSA; and 4) clarification as to any other matters noted *supra*.

    **DONE** and **ORDERED** this the **13th** day of **December 2022.**

                                    /s/ Kristi K. DuBose
                                    **KRISTI K. DuBOSE**
                                    **UNITED STATES DISTRICT JUDGE**